LOVE v CITY OF DETROIT

Docket No. 257375. Submitted January 31, 2006, at Detroit. Decided
April 13, 2006, at 9:00 a.m.

Scheherazde C. Love, as personal representative of the estates of
Milique J. Diggs, Deymond L. Diggs, Latiya Diggs, and Gentry
Gary Tresvant, deceased, brought an action in the Wayne Circuit
Court against the city of Detroit and several named and unnamed
firefighters of the Detroit Fire Department, alleging that the
firefighters were grossly negligent in failing to timely respond to a
fire and in failing to take effective steps to rescue individuals
trapped in the burning building. The court, William J. Giovan, J.,
granted summary disposition for the individual firefighters, con-
cluding that the arson that caused the fire was the proximate
cause of the deaths and that the firefighters therefore could not be
liable under MCL 691.1407(2)(c). The plaintiff appealed.

The Court of Appeals *held*:

The trial court correctly granted summary disposition for the
firefighters because there was no evidence that the firefighters
could have reached the victims or that, if the firefighters had acted
more aggressively, the victims would have been rescued. The
firefighters' actions did not constitute the proximate cause (the
one most immediate, efficient, and direct cause) of the deaths of
the decedents. MCL 691.1407(2)(c).

Affirmed.

COOPER, P.J., dissenting, would reverse the grant of summary
disposition for the firefighters and remand the case for trial.
Genuine issues of material fact remain regarding whether the
firefighters' alleged gross negligence in their late arrival or in their
failure to rescue those trapped inside the burning building was the
proximate cause of the deaths of the decedents. Summary dispo-
sition was inappropriate because a jury should decide whether the
arson or the actions of the defendants constitute the one most
immediate, efficient, and direct cause preceding the deaths.

The majority relied on the Supreme Court's peremptory order
of reversal, 474 Mich 914 (2005), of this Court's decision in *Dean
v Childs*, 262 Mich App 48 (2004). However, the peremptory order

included no analysis of fact or law as required by Const 1963, art 6, § 6, and its value as precedent is questionable.

GOVERNMENTAL IMMUNITY — FIREFIGHTERS — GROSS NEGLIGENCE — ARSON — PROXIMATE CAUSE OF INJURY OR DEATH.

The actions of firefighters in responding to a fire caused by arson and that resulted in the deaths of occupants of the building involved in the fire did not constitute the proximate cause of the deaths nor gross negligence absent evidence that the firefighters could have reached the victims or rescued the victims with more aggressive actions (MCL 691.1407[2][c]).

*Ernest L. Jarrett* for the plaintiff.

*Ruth C. Carter*, Corporation Counsel, and *Joanne D. Stafford*, Supervision Assistant Corporation Counsel, for the defendants.

Before: COOPER, P.J., and JANSEN and MARKEY, JJ.

MARKEY, J. Plaintiff appeals by right the trial court's order granting summary disposition in favor of the individual defendants, members of the Detroit Fire Department. We affirm. This appeal is being decided without oral argument pursuant to MCR 7.214(E).

Decedents died when they were unable to escape from a fire that engulfed their home. Plaintiff filed a suit alleging that the individual defendants acted in a grossly negligent manner by failing to timely respond to the fire and failing to take effective steps to rescue the trapped individuals.

The individual defendants moved for summary disposition pursuant to MCR 2.116(C)(7) and (10), alleging that the fire was deliberately set and that the arson, not their actions or omissions, proximately caused the deaths. The trial court agreed and granted the motion.[1]

---

[1] The trial court had previously granted summary disposition in favor of the city.

We review de novo a trial court's decision on a motion for summary disposition. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2002).

Governmental employees are immune from liability for injuries they cause during the course of their employment if they are acting or reasonably believe they are acting within the scope of their authority, if they are engaged in the exercise or discharge of a governmental function, and if their conduct does not amount to gross negligence that is the proximate cause of the injury or damage. *Robinson v Detroit*, 462 Mich 439, 458; 613 NW2d 307 (2000), citing MCL 691.1407(2). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(7)(a). To be the proximate cause of an injury, the gross negligence must be "the one most immediate, efficient, and direct cause" preceding the injury. *Robinson, supra* at 462. Evidence of ordinary negligence does not create a question of fact regarding gross negligence. *Maiden v Rozwood*, 461 Mich 109, 122-123; 597 NW2d 817 (1999).

Plaintiff argues that the trial court erred by granting summary disposition in favor of the individual defendants. Her theory is that, had the firefighters not acted in a grossly negligent manner, the persons trapped in the house would have been rescued. Plaintiff relies in part on *Dean v Childs*, 262 Mich App 48, 57-58; 684 NW2d 894 (2004) (*Dean I*), rev'd in part 474 Mich 914 (2005) (*Dean II*), in which this Court held that evidence that the defendant firefighter sprayed water on a deliberately set fire, "pushing" the fire toward the rear of the residence where other firefighters were attempting to rescue persons trapped inside the house, raised a question of fact regarding whether the defendant acted in a grossly negligent manner.

Our Supreme Court reversed in part this Court's decision in *Dean* and remanded for entry of an order granting the defendant's motion for summary disposition of the plaintiff's claim alleging gross negligence. That Court adopted as the basis for its decision in *Dean II* Judge GRIFFIN's opinion dissenting in part in *Dean I*. Judge GRIFFIN concluded that "the" proximate cause of the deaths of the decedents was the fire itself, not the defendant's actions in response to the fire. *Dean I, supra* at 62. Similarly, in this case, decedents died from the fire that engulfed the second and third floors of their home. The fire was advanced by the time the firefighters arrived at the home. Witnesses indicated that the victims could be heard screaming for help after the firefighters arrived; however, no evidence established that the firefighters could have reached the victims or that, if firefighters had acted more aggressively, the victims would have been rescued. The firefighters' actions did not constitute the proximate cause of decedents' deaths. MCL 691.1407(2)(c); *Robinson, supra* at 462. The trial court correctly granted summary disposition in favor of the individual defendants.[2]

We affirm.

JANSEN, J., concurred.

COOPER, P.J. (*dissenting*). I respectfully dissent because I believe a genuine issue of material fact remains as to whether defendants' alleged gross negligence, as

---

[2] On appeal, defendants assert that plaintiff failed to establish that they owed a duty to decedents. Defendants did not raise the issue of duty in the context of their motion for summary disposition, and the trial court did not consider the issue in making its decision. Therefore, we need not consider the issue. Our review is limited to issues actually decided by the trial court. *Preston v Dep't of Treasury*, 190 Mich App 491, 498; 476 NW2d 455 (1991).

an intervening and superseding cause, replaced the arson as the proximate cause of the decedents' deaths. Summary disposition therefore being an inappropriate resolution of this matter, I would reverse the circuit court's grant of summary disposition to the individual defendants and remand for trial.

The parties do not dispute that, for purposes of the governmental immunity analysis in this case, the individual defendants' response to the February 17, 1999, fire at 221 Watson in Detroit occurred within the scope of their authority as firefighters and constituted the discharge of a governmental function. MCL 691.1407(2)(a), (b). The issue is whether defendants' conduct "amount[s] to gross negligence that is the proximate cause of the injury or damage." MCL 691.1407(2)(c). "Gross negligence" is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(7)(a). "The determination whether a governmental employee's conduct constituted gross negligence under MCL 691.1407 is generally a question of fact, but, if reasonable minds could not differ, a court may grant summary disposition" as a question of law. *Oliver v Smith*, 269 Mich App 560, 563; 715 NW2d 314 (2006).

The affidavits plaintiff submitted in opposition to defendants' motion for summary disposition[1] include sufficient testimony to raise a genuine issue of material fact. Gwendolyn Elizabeth Mingo, a neighbor of the decedents, stated that she called 911 as soon as she became aware of the fire and that approximately 40 minutes passed from the time of her first call to the

---

[1] Because defendants sought summary disposition pursuant to MCR 2.116(C)(7) and (10), "[t]he affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action . . . must be considered by the court . . . ." MCR 2.116(G)(5).

arrival of the first Detroit Fire Department vehicle.[2] The vehicle that arrived "was not equipped to either fight fire or to save the people trapped inside of the house," and another 15 or 20 minutes passed before "a fully equipped fire truck" finally arrived.[3]

Barry Demings, a resident of 221 Watson who fled from the burning house, stated that his escape "took a fairly long period of time," and that when he reached the front yard, he saw several people with cell phones repeatedly calling 911, but that "at least another 20-30 minutes passed before any vehicles from the fire department arrived." Demings estimated that another 15 minutes elapsed between the initial arrival of the useless fire department "van type truck" and the arrival of a "fire-fighting" truck.

The statements of two other residents of 221 Watson who escaped the fire, Walter Louis Petties and Ruth Ann Diggs, corroborated the key facts: the first fire department vehicle did not arrive until approximately 20 minutes after they escaped the burning house; the first vehicle to arrive was not equipped to fight fires or rescue anyone trapped inside; the first real fire truck did not arrive until at least another 10 to 20 minutes had passed.

The delay was just the beginning, however. The affiants also all stated that the screams of several children trapped in the fire could be heard from the street when the fire department vehicles eventually

___

[2] According to Mingo's affidavit, during the 40-minute wait, she telephoned 911 "3 or 4 other times."

[3] The complaint asserted that after the equipped fire truck at last responded to the dispatch to 221 Watson, its negligent operation resulted "in an accident with one or more other motor vehicles, thereby further delaying the arrival of needed Detroit Fire Department personnel and equipment."

arrived, but the firefighters took no action to save them. Ruth Ann Diggs noted that when the equipped fire truck eventually arrived, its fire ladders "were never used," and that the "firemen on this truck did nothing to save people in the house, refusing to follow lay-people in who were still assisting others." Diana Lilly Diggs, another resident who escaped from the fire at 221 Watson, made these corroborating statements: "[t]he firemen on the second truck never attempted to use their ladder, and could not immediately direct water onto the fire as they lost control of the hose"; "[s]everal people urged the firemen to go into the house to save several children, but no one would go in"; "[t]he children didn't have to die, but the firemen failed to attempt to do anything which might have saved them."

Viewing the contents of the affidavits and all reasonable inferences in the light most favorable to plaintiff, I find that a reasonable trier of fact could find that defendants' response to the fire amounted to gross negligence. The affidavits indicate a delay of 40 to 60 minutes after reports of the fire were made before a truck equipped to fight the fire and make rescue efforts arrived. The affidavits also indicate that although the decedents were alive when defendants finally arrived in the equipped fire truck, defendants inexplicably made no attempts to rescue them, by ladder or otherwise. Although defendants eventually sprayed some water on the house, according to Petties, this rescue effort occurred after the children apparently had succumbed to the fire.

Accepting the affidavits as true, defendants acted with more than ordinary negligence. This level of negligence contrasts sharply with ordinary negligence as it has appeared in similar situations, for example where firefighters inadvertently searched in the wrong

location for children trapped by fire. See *Costa v Community Emergency Medical Services, Inc*, 263 Mich App 572, 578; 689 NW2d 712 (2004) (explaining that evidence of ordinary negligence does not create an issue of fact regarding gross negligence). The evidence that defendants knowingly disregarded the peril of those trapped in the burning house establishes a genuine issue of fact because a reasonable jury could determine that defendants were "so reckless as to demonstrate a substantial lack of concern for whether an injury results," MCL 691.1407(7)(a). *Oliver, supra* at 565; *Costa, supra* at 579.

The majority does not reach the issue of gross negligence, but affirms the circuit court grant of summary disposition to defendants in significant part due to reliance on *Dean v Childs*, 262 Mich App 48, 60-63; 684 NW2d 894 (2004) (GRIFFIN, J., concurring in part and dissenting in part), rev'd in part 474 Mich 914 (2005) (peremptorily reversing "for the reasons stated by dissenting . . . Judge GRIFFIN"). Judge GRIFFIN's partial dissent found that "the proximate cause" of the deaths of plaintiff's decedents was fire, and not a firefighter's alleged gross negligence. *Id*. at 61. Because the governmental immunity statute admits of only one proximate cause, "the" rather than "a" proximate cause, the allegedly negligent firefighter was immune from suit. *Id*. at 63.

I dissent because I find *Dean* inapplicable here. As a threshold matter, the Supreme Court's reversal of this Court's holding in *Dean*, which would have allowed a jury to decide whether the firefighter's alleged gross negligence was the proximate cause of the deaths of the four children who perished in the fire, was executed by peremptory order, the precedential value of which is uncertain. Even if the order does have precedential

value, *Dean* is distinguishable from the analysis of this case. Neither Judge GRIFFIN's dissent nor the Supreme Court's peremptory order adopting it contains any analysis or reference to the simple principle of tort law that an intervening, superseding occurrence can constitute the one most immediate, efficient, and direct cause of an injury.

### I. PRECEDENTIAL VALUE OF PEREMPTORY ORDER

The Michigan Constitution requires that "[d]ecisions of the supreme court . . . shall contain a concise statement of the facts and reasons for each decision . . . ." Const 1963, art 6, § 6. Orders that include such facts and reasoning have been held to be binding precedent. *People v Crall*, 444 Mich 463, 465 n 8; 510 NW2d 182 (1993); *Dykes v William Beaumont Hosp*, 246 Mich App 471, 483; 633 NW2d 440 (2001). However, where, as in *Dean II*, a peremptory order includes no analysis of fact or law, it is unclear whether it applies beyond the contours of the specific facts on which it is based. Merely adopting the reasons stated by the dissent in the lower court does not give full or specific direction to the lower courts as a group as to what in the dissent applies, or when, or how. Neither does it clarify which aspects of the lower court majority opinion the Court views as incorrect, or whether incorrect as a matter of law or only with respect to the particular facts of the case at issue.

In *Dean,* and in this case, questions both of fact and law persist.

### II. INTERVENING/SUPERSEDING CAUSE MAY BE THE PROXIMATE CAUSE

Even if the peremptory order in *Dean* is binding precedent in like cases, it is distinguishable here, where

a significant question not raised in *Dean* remains, that of intervening and superseding causation. The majority affirms the circuit court's grant of summary disposition to defendants on the basis that the arson, not any conduct of defendants, was the proximate cause of the decedents' deaths. I believe, however, that the traditional and still valid principles of intervening and superseding causation raise a question of fact as to whether the alleged gross negligence replaces the arson as "the" proximate cause of the deaths at issue here.

If there may be only one proximate cause, then, where an intervening cause links directly to the harm at issue, it arguably supplants prior causes and becomes "the" proximate cause: "If a new force or power has intervened, of itself sufficient to stand as the cause of the mischief or injury, the first must be considered as too remote." *Borck v Michigan Bolt & Nut Works*, 111 Mich 129, 133; 69 NW 254 (1896), citing a survey of proximate cause cases by COOLEY, J., in *Lewis v Flint & Pere Marquette R Co*, 54 Mich 55; 19 NW 744 (1884).

> What constitutes proximate cause in a given case is frequently a troublesome one, and much discussion of the question appears in the authorities. . . .
>
> The conclusion to be drawn from an examination of all the authorities on the question seems to be that the defendant may not be held liable for his original negligent act unless that act produces the consequences for which recovery is sought, without the intervention of any independent, unforeseen cause, without which the injuries would not have occurred. If such cause intervenes, it may be said that the wrong of the defendant is too remote to be made the basis of an action. . . . [*Calliari v Fisher*, 190 Mich 56, 61; 155 NW 689 (1916).]

See also *Stoll v Laubengayer*, 174 Mich 701, 704-706; 140 NW 532 (1913).

"In order to be a superseding cause, thereby relieving a [prior] negligent defendant from liability, an intervening force must not have been reasonably foreseeable." *Ridley v Detroit*, 231 Mich App 381, 389; 590 NW2d 69 (1998), remanded on other grounds sub nom *Ridley v Collins*, 463 Mich 932 (2000). Intervening causes that are reasonably foreseeable and therefore not superseding causes include ordinary negligence, but not gross negligence:

> The standard by which to gauge whether an intervening cause supersedes, and thus severs the causal link, is generally one of reasonable foreseeability. For example, suppose that a defendant stabs a victim and the victim is then taken to a nearby hospital for treatment. If the physician is negligent in providing medical care to the victim and the victim later dies, the defendant is still considered to have proximately caused the victim's death because it is reasonably foreseeable that negligent medical care might be provided. At the same time, *gross* negligence or intentional misconduct by a treating physician is not reasonably foreseeable, and would thus break the causal chain between the defendant and the victim.

> The linchpin in the superseding cause analysis, therefore, is whether the intervening cause was foreseeable based on an objective standard of reasonableness. If it was reasonably foreseeable, then the defendant's conduct will be considered a proximate cause. If, however, the intervening act by the victim or a third party was not reasonably foreseeable—e.g., *gross* negligence or intentional misconduct—then generally the causal link is severed and the defendant's conduct is not regarded as a proximate cause of the victim's injury or death. [*People v Schaefer*, 473 Mich 418, 437-438; 703 NW2d 774 (2005).]

See also *People v Cook*, 39 Mich 236, 240 (1878) (Where a criminal act, here a shooting, is followed by allegedly negligent treatment of the victim, "the accused will be held responsible, unless [the victim's death] was occasioned, not by the wound, but by grossly erroneous medical treatment.").

On the facts in this case, a delay of 40 to 60 minutes before firefighters equipped to fight a fire or to begin rescue efforts arrived may certainly qualify as grossly negligent and, therefore, not reasonably foreseeable. Likewise, it may be unforeseeable gross negligence that firefighters, when they did arrive, did nothing to assist those trapped inside. A question of fact as to whether the intervening cause of the deaths was reasonably foreseeable therefore remains.

Whether an intervening act of negligence is a superseding proximate cause is a question for the jury. *May v Parke, Davis & Co,* 142 Mich App 404, 419; 370 NW2d 371 (1985); *Taylor v Wyeth Laboratories, Inc,* 139 Mich App 389, 401-402; 362 NW2d 293 (1984). With this jury question as yet unanswered, summary disposition of plaintiff's claims is inappropriate.

Taking the affidavits and other documentary evidence in the light most favorable to the nonmoving party, here plaintiffs, issues of fact remain as to whether defendants were grossly negligent and whether that negligence is a superseding cause of decedents' deaths. A jury might conclude that defendants did not respond to the fire in a grossly negligent fashion or that even had defendants arrived promptly they could not have saved the decedents, and, therefore, that the fire itself constitutes "the one most immediate, efficient, and direct cause preceding" the decedents' deaths. *Robinson v Detroit,* 462 Mich 439, 445-446; 613 NW2d 307 (2000). However, a reasonable jury could also reach just the opposite conclusion. I dissent because the majority removes the unresolved factual questions from the jury's consideration.

I would reverse and remand for trial.