*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF RALPH BROWN, by VICTORIA
BROWN, Personal Representative,

        Plaintiff-Appellee,

v

SEAN WOLAN and JEFFREY VESCIO,

        Defendants-Appellants.

UNPUBLISHED
August 27, 2019

No. 340533
Oakland Circuit Court
LC No. 2016-152431-NO

Before: MURRAY, C.J., and STEPHENS and RIORDAN, JJ.

MURRAY, C.J. (*dissenting*).

Defendant Jeffrey Vescio, an experienced paramedic who has no record of prior incidents involving the transporting of patients on stretchers, decided to individually transport plaintiff's decedent out of the nursing home while his partner completed some paperwork inside. As evidenced by a video tape which captures the entire incident, as the sidewalk leads to the parking lot, it takes a sharp turn. As the stretcher reached the turn, one of the back wheels slipped off the edge (there are about two inches between the height of the sidewalk and the adjacent grass), and the stretcher began to fall towards the grass. Being alert to the situation, the paramedic dropped a medical bag that he was holding in one hand, and immediately secured the stretcher, which kept it from falling to the ground. Meanwhile, his partner, defendant Sean Wolan, immediately came to the scene, and helped restore the stretcher to an upright position. The plaintiff's decedent was transported to the hospital, and neither paramedic informed the hospital personnel about the tipping of the stretcher.

That is all this case is about, and these facts are undisputed. In other words, there is no evidence that either defendant made a conscience decision to disregard any known dangers to the decedent when transporting him down the sidewalk towards the ambulance. In addition, the evidence establishes that neither defendant had any prior incidents or safety issues in transporting other patients on a stretcher, even in the manner utilized with plaintiff's decedent. Despite this lack of evidentiary support, the majority opinion concludes that expert testimony regarding the proper way to transport a patient on a stretcher, which the majority presumes was known to defendants, creates a genuine issue of material fact as to whether these defendants'

-1-

conduct reaches the high standard of a substantial lack of concern for whether injury results. Suffice it to say, under these facts, plaintiff at best has established a negligence claim which is not sufficient as a matter of law to establish a genuine issue of material fact as to whether defendants' conduct rises to the level of gross negligence. Accordingly, I would hold that plaintiff's suit is barred by governmental immunity, and should have been dismissed.

In conducting a de novo review of the trial court's order denying defendants' motion for summary disposition, *Pew v Mich State Univ*, 307 Mich App 328, 331; 859 NW2d 246 (2014), it is apparent that no reasonable juror could conclude[1] that defendants' conduct rose to the high level of gross negligence required by MCL 691.1407(2). *Love v Detroit*, 270 Mich App 563, 565; 716 NW2d 604 (2006). "Gross negligence" is statutorily defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). It is critically important to remember in cases involving statutory gross negligence that "[e]vidence of ordinary negligence is not enough to establish a material question of fact regarding whether a government employee was grossly negligent." *Chelsea Investment Group, LLC v Chelsea*, 288 Mich App 239, 265; 792 NW2d 781 (2010). To reach this high threshold, one must establish an "almost . . . willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). This holds true because "[t]he plain language of the governmental immunity statute indicates that the Legislature limited employee liability to situations where the contested conduct was substantially more than negligent." *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999).

Plaintiff alleges that four acts or omissions constituted gross negligence on the part of defendants: (1) Vescio's attempt to maneuver the stretcher down the ramp alone, with one hand; (2) defendants' failure to stabilize the decedent's head and neck when they raised the stretcher to the upright position; (3) defendants' failure to promptly evaluate the decedent for head, neck, and spinal injury; and (4) defendants' failure to report the incident to emergency room (ER) personnel.

In *Costa v Community Emergency Med Servs, Inc*, 263 Mich App 572; 689 NW2d 712 (2004), aff'd 475 Mich 403 (2006), this Court considered whether the conduct of emergency medical responders could be considered grossly negligent. The defendants, two municipal emergency medical services employees, and two employees of a private emergency medical

---

[1] "The determination whether a governmental employee's conduct constituted gross negligence that proximately caused the complained-of injury under MCL 691.1407 is generally a question of fact, but, if reasonable minds could not differ, a court may grant summary disposition." *Briggs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007).

services contractor,[2] were dispatched to provide services for the plaintiff, who had been seen lying unconscious on the ground after being struck and knocked down during a fight. *Id*. at 576. When the defendants arrived, the plaintiff had been moved from the pavement to inside a vehicle. *Id*. He became coherent after the defendants administered an ammonia inhalant, but refused treatment, and signed a form acknowledging his refusal. *Id*. at 576-577. The plaintiff later filed suit alleging that the defendants were grossly negligent by (1) failing to assess the plaintiff's vital signs; (2) failing to examine the plaintiff while he was unconscious; (3) failing to properly assess his competence to refuse treatment; (4) failing to explain the potential consequences of refusing treatment; and (5) failing to transport him to a hospital. *Id*. at 579-580. This Court held that "[n]o reasonable juror could have found that [the defendants] behaved so recklessly 'as to demonstrate a substantial lack of concern for whether an injury results' " under either the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, or the emergency medical services act (EMSA), MCL 333.20901 *et seq. Id*. at 579.

Upon de novo review of the record, I would hold that no reasonable juror could conclude that defendants' conduct in regard to handling the stretcher and caring for the decedent during and after the tipping incident rises to the level of statutory gross negligence. Although Vescio's pulling the stretcher with one hand, without Wolan guiding the other end, might not have been the most cautious method for moving the stretcher, no reasonable trier of fact could find that it constituted "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).

It is undisputed that Vescio had moved stretchers with only one hand on prior occasions, without adverse outcomes. Although the usual procedure is for two persons to move a stretcher, it is undisputed that Vescio attempted to compensate for the lack of a second person by exercising the precaution of locking the rear wheels to prevent the stretcher from pivoting. Although locking the wheels did not prevent the right wheel from veering off the walkway, Vescio's choice of an inadequate safeguard does not establish conduct so reckless as to demonstrate a substantial lack of concern for the decedent's safety. In fact, it shows that *he was* concerned for decedent's safety, but the measures taken were simply inadequate.

Vescio's reaction to the tipping stretcher also was not reckless. He immediately acted to prevent the stretcher from hitting the ground by lowering the stretcher while positioning himself beside the stretcher to break the fall. Vescio did not prevent the decedent's head from moving, but he prevented the more immediate and obvious harm of the decedent's body hitting the ground. Likewise, the evidence shows that Wolan acted immediately to prevent imminent harm

---

[2] *Costa* was decided under the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, and the emergency medical services act (EMSA), MCL 333.20901 *et seq*. Similar to the GTLA, the EMSA provides first responders, emergency medical technicians, and paramedics immunity from liability for ordinary negligence, but not gross negligence. MCL 333.20965. The term "gross negligence" as used in MCL 333.20965(1) is construed in the same manner as the GTLA, to mean " 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.' " *McLain v Lansing Fire Dep't*, 309 Mich App 335, 343; 869 NW2d 645 (2015) (citation omitted).

from the stretcher tipping. Wolan was reacting to an urgent situation, to prevent the decedent from striking the ground. Again, defendants' actions might have been inadequate, but no reasonable juror could conclude that either defendant demonstrated a "substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).

With respect to plaintiff's allegations that defendants failed to properly assess the decedent for injury, failed to document the incident and their assessments, and failed to report the incident to the hospital ER staff, these circumstances could support a jury-submissable issue regarding negligence. Again, however, any deficiencies in Vescio's response did not rise to the level of gross negligence. Vescio testified that although he did not believe the incident involved any mechanism for injury, he palpated the decedent's neck. Vescio also testified that he did not instruct Wolan to document the incident or report it to the hospital staff because reporting and documentation were not part of Vescio's duties in the ambulance run. Based on his prior experience in working with Wolan, Vescio had no reason to doubt Wolan's judgment in the performance of his duties. Also, Vescio did not have supervisory authority over Wolan. Vescio's reliance on Wolan to properly document the incident and report it to the ER personnel, which is not a disputed fact, is not indicative of a substantial lack of concern for the decedent's well-being.

For his part, Wolan testified that he did not report or document the incident because he did not believe the decedent had been injured. Even if Wolan exercised mistaken judgment in this regard, no reasonable juror could conclude that this omission rises to the level of conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results, particularly considering the absence of any immediately apparent injury or harm. The evidence establishes that Wolan was, at worst, culpable for misjudging the incident and underestimating the likelihood of injury, but Wolan's failure to report and document the incident does not rise to the level of gross negligence.

Accordingly, in my judgment, defendants were entitled to summary disposition because plaintiff failed to establish a genuine issue of material fact whether defendants' conduct rose to the level of gross negligence under the GTLA.


/s/ Christopher M. Murray